**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MAGDALENA ESTEBAN-MARCOS;
PEDRO JOSE PATROCIN, a/k/a Pedro
Jose Petrosenio; ESTEBAN JOSE
PATROCIN, a/k/a Esteban Jose
Petrosenio,

     Petitioners,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9561
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Petitioners Magdelena Esteban-Marcos and her sons, Pedro Jose Patrocin and

Esteban Jose Patrocin, all of whom are Guatemalan nationals, seek review of the

Board of Immigration Appeals' (BIA) decision denying their motion to reopen

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

removal proceedings. For the reasons explained below, we deny their petition for review.

I

Ms. Esteban-Marcos entered the United States in 2003, followed by her sons in 2007. In April 2007, the government charged petitioners with entering this country without inspection or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). They conceded the charges but applied for asylum, restriction on removal, and relief under the Convention Against Torture (CAT). Through counsel, they appeared before an immigration judge (IJ) and introduced evidence that they had lived difficult lives in Guatemala. Petitioners are Mayans who speak Kanjobal, and Ms. Esteban-Marcos was hated by others who apparently thought her father was a guerrilla fighter. Also, one of her sons was born with a genetic condition that required multiple surgeries. Based on this evidence, their attorney claimed they were persecuted in Guatemala and had a well-founded fear of future persecution because they were members of a particular social group: "individuals who are of Mayan descent, who speak the . . . K[a]njobal language, who do not have access to adequate care for their children based upon rare genetic defects, compounded with the fact that there are financial difficulties and [no] access to adequate care in the community." Admin. R. at 1067.

The IJ denied relief and ordered petitioners removed to Guatemala. The IJ determined that Ms. Esteban-Marcos's asylum claim was untimely and her sons were not eligible for asylum because their particular social group was not cognizable, any economic disadvantage they experienced was not sufficient to constitute past

2

persecution, there was no nexus between the inadequate medical care in Guatemala and a statutory protected ground for relief, and they lacked a well-founded fear of persecution.[1] Based on these findings, the IJ concluded that petitioners also failed to meet the more stringent standards for restriction on removal. Additionally, the IJ denied CAT relief because there was no evidence petitioners would be tortured by or with the acquiescence of the Guatemalan government.

Through the same counsel, petitioners appealed to the BIA, which affirmed the IJ's decision. Petitioners did not seek judicial review. Instead, still represented by the same attorney, they requested and received successive annual administrative stays of removal from 2014 until the government denied a stay on February 12, 2019. At that point, petitioners retained new counsel and moved the BIA to reopen their removal proceedings. The motion to reopen, which petitioners filed on March 5, 2019, claimed previous counsel rendered ineffective assistance and there were materially changed conditions in Guatemala warranting reopening their case.[2]

The BIA denied the motion to reopen as untimely, ruling that the deadline for filing the motion was September 12, 2013. The BIA recognized the deadline could be equitably tolled based on ineffective assistance of counsel, but it concluded that petitioners failed to show due diligence in pursuing their case. The BIA reasoned

---

[1] Although the sons were riders on Ms. Esteban-Marcos's applications, the IJ separately evaluated their asylum claims on the merits. *See* Admin. R. at 860.

[2] Petitioners also sought sua sponte reopening, but the BIA denied their request. This ruling is not before us.

that they provided no evidence or explanation indicating when they learned of former counsel's alleged ineffectiveness, what efforts they made to discover it, or what they did to reopen their case upon learning of it. The BIA also observed that, although the deadline was inapplicable to a motion to reopen based on changed country conditions, petitioners' evidence did not establish materially worse conditions in Guatemala since the IJ's removal hearing—it reflected mistreatment and violence against indigenous women that had existed in Guatemala for decades. Accordingly, the BIA denied the motion to reopen. Petitioners subsequently filed this petition for review.

## II

"We review the BIA's decision on a motion to reopen only for an abuse of discretion. The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (brackets and internal quotation marks omitted). "[M]otions to reopen immigration cases are plainly disfavored, and [non-citizens] bear[] a heavy burden to show the BIA abused its discretion." *Id.* (brackets and internal quotation marks omitted). To warrant reopening within the BIA's discretion, a non-citizen must present new evidence "demonstrat[ing] that if proceedings before the IJ were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case." *Id.* at 1240 (brackets and internal quotation marks omitted).

4

A motion to reopen must be filed within 90 days of the date of entry of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). The order of removal here became final on June 14, 2013, so the 90-day period for filing the motion expired on September 12, 2013. Petitioners filed their motion to reopen on March 5, 2019—some five and a half years late. Thus, the motion was untimely. Nonetheless, petitioners contend they are entitled to equitable tolling because their former counsel rendered ineffective assistance. They also contend the deadline did not apply because they established materially changed conditions in Guatemala. We consider these contentions in turn.

A. *Equitable Tolling Due to Ineffective Assistance*

Ineffective assistance of counsel may equitably toll the period for filing a motion to reopen if a non-citizen "demonstrate[s] not only that [her] constitutional right to due process has been violated by the conduct of counsel, but that [she] has exercised due diligence in pursuing the case during the period [she] seeks to toll." *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 (10th Cir. 2005) (internal quotation marks omitted). "To determine whether tolling is appropriate, a simple cursory comparison of the date of filing and the regulatory time line for filing motions is not enough. Specifically, the BIA must review [the non-citizen's] due diligence along with [her] attempts to comply with the BIA's requirements detailed in *Matter of*

*Lozada*[, 19 I. & N. Dec. 637 (BIA 1988)]." *Galvez Pineda v. Gonzales*, 427 F.3d 833, 838 (10th Cir. 2005) (brackets and internal quotation marks omitted).[3]

Here, the BIA assumed without deciding that former counsel rendered ineffective assistance that prejudiced petitioners' case. But the BIA determined that petitioners failed to show due diligence because they failed to explain when they learned of former counsel's alleged ineffectiveness or what they did to discover it between the time of the IJ's hearing in 2012 and the time they filed their motion to reopen in 2019. Petitioners assert it is evident from their motion to reopen that they discovered the alleged ineffective assistance after the government denied their stay request on February 12, 2019, at which point they promptly hired new counsel, who told them less than two weeks later that former counsel was ineffective. Their new counsel then complied with the procedural requirements of *Lozada* and filed the motion to reopen on March 5, 2019. Petitioners insist they did not know former counsel was ineffective until their current counsel told them.

But equitable tolling is only "appropriate up to the point at which [petitioners] knew or should have known of prior counsel's ineffectiveness." *Galvez Pineda*, 427 F.3d at 838. Ms. Esteban-Marcos's affidavit, which she attached to the motion to reopen, suggests she knew former counsel was ineffective at the time of the IJ

---

[3] In *Matter of Lozada*, the BIA set forth the procedural requirements for bringing a claim of ineffective assistance of counsel: 1) an affidavit detailing the agreement with counsel, 2) notice to counsel describing the allegations and providing an opportunity to respond, and 3) a complaint filed with the proper disciplinary authority or an explanation why no complaint was filed. 19 I. & N. Dec. 637, 639 (BIA 1988).

hearing in 2012, and perhaps earlier. She states that former counsel "took [her] asylum case in the direction he wanted to[] and never consulted or helped [her] understand what [she] needed to understand on [her] case." Admin. R. at 121. It further states that she "was never brave enough to fire him because [she] had already invested too much money on him and [she] felt that if [she] changed attorneys it could jeopardize [her] case." *Id.* at 122. Moreover, in petitioners' motion to reopen, they argued that former counsel was ineffective in seeking relief based on their membership in a particular social group rather than their race. They also faulted him for focusing on the son's medical condition, his limited treatment options in Guatemala, and the economic hardship they faced, rather than ordering a psychological exam for Ms. Esteban-Marcos and eliciting testimony from her about a sexual assault she suffered and the kidnapping of her daughter. But all of these facts were known to petitioners at the time of the IJ's hearing in 2012, and yet, despite knowing that former counsel argued as he did rather than as they wanted him to, they made no effort to pursue an ineffective-assistance claim until 2019. We cannot countenance such dilatory conduct when the basis for the ineffective-assistance claim would have been apparent to them at the time of the hearing before the IJ. *See Maatougui*, 738 F.3d at 1244 (upholding finding that petitioner failed to exercise due diligence where she was aware of the alleged errors that made up her ineffective-assistance claim and could have taken steps to assert her claim but she waited to raise it in an untimely motion to reopen).

7

Indeed, petitioners, knowing that former counsel unsuccessfully pursued theories with which they disagreed, allowed him to advance those same theories on appeal to the BIA without raising any concerns. They then permitted former counsel to continue requesting successive stays of removal until the government denied their request in 2019. It was not until that point—more than five years after the filing deadline and some seven years after the IJ's hearing—that they finally filed their motion to reopen raising concerns that they had at the time of the IJ's hearing in 2012. "Removable aliens are not permitted to delay matters by pursuing multiple avenues of relief seriatim when no reason suggests why they could not be pursued simultaneously." *Galvez Pineda*, 427 F.3d at 839. If nothing else, it was petitioners' burden to explain why they did not consult with another attorney sooner. But as the BIA observed, they provided no such explanation.

Petitioners insist they need not investigate whether former counsel was ineffective. But they do not dispute that tolling is only appropriate until they knew or should have known of the alleged ineffectiveness. The record indicates they should have known at the time of the IJ's hearing in 2012 that former counsel failed to raise the arguments they wanted him to raise.

Petitioners also contend the BIA erred by simply comparing the deadline for filing the motion to reopen with the date they filed it and concluding that it was untimely. They suggest we should remand, as we did in *Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002), because the BIA failed to adequately analyze their diligence. In *Riley*, we remanded because the entirety of the BIA's analysis was to note when the

8

non-citizen learned of the BIA's decision and when he filed his motion to reopen years later, without analyzing the due diligence issue. *See id.* at 1257-58. Here, by contrast, the BIA observed that petitioners did not provide any information reflecting what they did to discover former counsel's alleged ineffectiveness between the time of their hearing and the time they filed the motion to reopen. The BIA also recognized that they failed to specify when they discovered the deficient performance or what they did to reopen their case upon learning it was deficient. Thus, unlike in *Riley*, the BIA here recognized the possibility of equitable tolling if petitioners had demonstrated that they acted with due diligence, and it explained why it concluded they failed to do so. There is no need for additional findings on this issue

To the extent petitioners assert they were denied due process by the BIA's "conclusory statements" denying their motion to reopen, Pet'r Br. at 33, their argument "is just a quarrel about the level of detail required in the BIA's analysis, not a colorable due process claim," *Alzainati v. Holder*, 568 F.3d 844, 851 (10th Cir. 2009). "The BIA is not required to write an exegesis on every contention. What is required is that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Maatougui*, 738 F.3d at 1242-43 (brackets and internal quotation marks omitted). The BIA's analysis here is adequate to permit our review.

Moreover, the record does not support petitioners' contention that the BIA failed to consider evidence they submitted with their motion to reopen. The BIA considered the evidence but concluded that it did not explain what efforts they made

9

to pursue their ineffective-assistance claim. The evidence does reflect that present counsel acted to comply with *Lozada* after the government denied a stay in February 2019, but it does not reflect any effort to pursue the claim before then, despite petitioners' knowledge of the factual basis for the ineffective-assistance claim at the time of the IJ hearing in 2012. As noted above, Ms. Esteban-Marcos's affidavit states that she told former counsel that she and her family were persecuted because of their race and he failed to seek asylum on that basis. *See* Admin. R. at 121-22. It also states that she did not fire him because she did not want to "jeopardize [her] case." *Id.* at 122. Given this evidence, the BIA did not abuse its discretion in denying the motion to reopen for lack of due diligence.

## B. *Changed Conditions*

We next consider petitioners' contention that changed country conditions exempt them from the 90-day deadline for filing a motion to reopen. Under 8 U.S.C. § 1229a(c)(7)(C)(ii), "[t]here is no time limit on the filing of a motion to reopen if . . . [it] is based on changed country conditions arising in . . . the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." "[A] significant increase in the level of persecution constitutes a material change in country conditions for purposes of 8 U.S.C. § 1229a(c)(7)(C)," and "the BIA abuses its discretion when it fails to assess and consider a petitioner's evidence that the persecution of others in his protected category has substantially worsened since the initial application." *Qiu v. Sessions*, 870 F.3d 1200, 1204-05 (10th Cir. 2017).

10

Petitioners contend the BIA ignored evidence of significantly worsened conditions in Guatemala for indigenous women since their initial application for relief, and particularly since 2018. Petitioners reference nearly 700 pages of articles, which they contend "report[] a significant increase in persecution of indigenous persons of Mayan descent." Pet'r Br. at 27. But the only specific evidence they cite is part of a 2015 report stating that the mishandling of social conflicts "has worsened the situation faced by human rights defenders, community leaders and indigenous populations." Admin. R. at 269. They also cite part of another report published in 2015 noting that in recent years, the weakened national police caused a worsening security situation. This evidence does not reflect a significant increase in the persecution of Mayans or Mayan women in Guatemala since petitioners' initial application for relief or since the IJ hearing in 2012. To be sure, the evidence documents a long history of violence toward Mayan women, but the BIA did not ignore this evidence. Rather, the BIA analyzed country reports that generally described the violence and mistreatment of indigenous Guatemalans. The BIA observed that the evidence reflected ongoing "mistreatment and violence in [Guatemala] for decades," which "was a serious problem, even at the time of [the 2012] hearing." *Id.* at 4 (internal quotation marks omitted). And because of the continuing nature of this violence, the BIA concluded there was insufficient evidence of a material change in country conditions. The record supports this conclusion, and thus, the BIA did not abuse its discretion in denying the motion to reopen based on changed country conditions.

11

## III

Accordingly, the petition for review is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge